IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John Doe<br><br>*Plaintiff*,<br><br>v.<br><br>United States Dept. of Transportation<br>1200 New Jersey Avenue SE<br>Washington, DC 20590<br><br>Peter P. Buttigieg, U.S. Dept. of Transportation<br>1200 New Jersey Avenue SE<br>Washington, DC 20590<br><br>Blane A. Workie, U.S. Dept. of Transportation<br>1200 New Jersey Avenue SE<br>Washington, DC 20590<br><br>Centers for Disease Control & Prevention<br>1600 Clifton Road NE<br>Atlanta, Georgia 30333<br><br>Rochelle Walensky, CDC<br>1600 Clifton Road NE<br>Atlanta, Georgia 30333<br><br>United States Dept. of Health & Human Services<br>200 Independence Ave SW<br>Washington, DC 20201<br><br>Xavier Becerra, U.S. Dept. of HHS<br>200 Independence Ave SW<br>Washington, DC 20201<br><br>*Defendants*. | Case No, __2:22-cv-402__<br><br>COMPLAINT |

---

[1] Plaintiff intends to submit a motion to proceed under pseudonym after this case is filed.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff seeks relief from this Court against Defendants United States of America, the Department of Transportation ("DOT"), Peter P.M. Buttigieg (in his official capacity as Secretary of Transportation), Blane A. Workie (in her official capacity as Assistant General Counsel for the Office of Aviation Consumer Protection within the DOT), the Centers for Disease Control and Prevention (the "CDC"), Rochelle P. Walenksky (in her official capacity as Director of the CDC), the United States Department of Health & Human Services ("HHS") and Xavier Becerra (in his official capacity as Secretary of HHS) (collectively, the "Defendants").

Plaintiff challenges the lawfulness of Defendants' mandate requiring people to wear masks while on commercial airlines, conveyances, and at transportation hubs[2] with extremely limited and conditional exceptions for persons with disabilities[3] (the "mask mandate") and would show the Court as follows:

## PARTIES

1. Plaintiff is an individual with a disability who frequently travels via commercial airlines.

2. Defendant United States of America is a government entity.

3. Defendant DOT is an agency of the United States.

4. Defendant Peter Buttigieg is the Secretary of the DOT and is sued in his official capacity.

5. Defendant Blane A. Workie is the Assistant General Counsel for the Office of Aviation Consumer Protection (OACP), an agency within DOT which is responsible in part for the

---

[2] Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs, 86 Fed. Reg. 8025 (Feb. 3, 2021), available at https://www.govinfo.gov/content/pkg/FR-2021-02-03/pdf/2021-02340.pdf.

[3] United States Department of Transportation, Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft (February 5, 2021), available at https://www.transportation.gov/sites/dot.gov/files/2021-02/Mask%20Notice%20Issued%20on%20Feb%205.pdf.

challenged agency action taken pursuant to the mask mandate, and is sued in her official capacity.

6. Defendant CDC is an agency of the United States located within HHS.

7. Defendant Rochelle P. Walensky is the Director of the CDC and is sued in her official capacity.

8. Defendant HHS is an Agency of the United States.

9. Defendant Xavier Becerra is the Secretary of HHS and is sued in his official capacity.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction because this action arises under 5 U.S.C. §§ 702 and 706 because Plaintiff is a person suffering legal wrong and adversely affected by agency action and is entitled to judicial review thereof; and 42 U.S.C. § 1983 because this case involves a denial of civil rights at the direction and permission of the United States government.

2. Venue is proper in this judicial district because a substantial part of the events giving rise to this lawsuit arose within this district, per 28 U.S.C. § 1391, including events which occurred or will occur at Pittsburgh International Airport and with regards to flights to and from Pittsburgh International Airport.

## FACTS

### A. The Mask Mandate Order

3. The CDC mask mandate for air travel was issued on January 29, 2021; was published in the Federal Register on February 3, 2021; and states that it remains in effect "unless modified or rescinded" and/or "until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Act (42 U.S.C. 247d)

that a public health emergency exists." 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021). It also includes the additional guidance published on the CDC's website at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html. The order published in the Federal Register and the additional guidance are henceforth collectively referred to as the "CDC order".

4. The DOT mask mandate for air travel includes Emergency Amendment 1546-21-01C, Security Directive 1542-21-01C, Security Directive 1544-21-02C, and Security Directive SD1582-84-21-01C, all of which were issued on January 19, 2022 and are the third set of extensions of orders originally issued January 31, 2021; and the Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft, issued by the DOT through the Office of Aviation Consumer Protection on February 5, 2021, available at https://www.transportation.gov/sites/dot.gov/files/2021-02/Mask%20Notice%20Issued%20on%20Feb%205.pdf. The current amendments/directives and the enforcement policy are henceforth referred to collectively as the "DOT order" unless otherwise specified.

5. The mask mandate[4] requires all persons traveling on conveyances and/or present in a transportation hub within the United States to wear a mask.

6. "Conveyance" is defined as "an aircraft, train, road vehicle, vessel . . . or other means of transport, including military," and rideshare arrangements. 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).

---

[4] This phrase is used to refer collectively to both the CDC order and the DOT order as cited above, unless otherwise specified.

7. "Transportation hub" is defined as "any airport, bus terminal, marina, seaport or other port, subway station, terminal (including any fixed facility at which passengers are picked up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States." *Ibid*.

8. "Mask" is defined as "a material covering the nose and mouth of the wearer, excluding face shields." *Ibid*.

9. The CDC order exempts "a person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 1210 et seq.)." The order states "CDC will issue additional guidance regarding persons who cannot wear a mask under this exemption."[5] *Ibid*.

10. The additional guidance under the CDC order gives two categories of persons with disabilities who "are" exempt from the mask requirement plus three categories of persons with disabilities who "might" be exempt from the mask requirement "based on factors specific to the person". *Ctrs. for Disease Control and Prevention, Order: Wearing of face masks while on conveyances and at transportation hubs § Disability Exemptions of the Order*.

11. The CDC order states "Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the operator, as well as require evidence that the person does not have COVID-19 such as

---

[5] As previously stated, the aforementioned additional guidance regarding persons with disabilities is published on the CDC's website at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html and is encompassed in the term "CDC order".

a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19." It further stipulates that "Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance." 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).

12. Passenger compliance with the CDC order is enforced by the airlines themselves, and in turn, airline compliance with the CDC order is enforced by the DOT.

13. The DOT order, including the DOT notice of enforcement policy as described above, is supposed to bring airlines into compliance with the CDC order and the Air Carrier Access Act, 49 U.S.C. § 41705 and 14 C.F.R. Part 382.

14. The DOT order states that "airlines are required to implement face mask policies that treat passengers presumptively as potential carriers of the SARS-CoV-2 virus and, therefore, as presenting a potential threat to the health and safety of other passengers and the crew." *U.S. Dept. of Transportation, Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft* (Feb. 5, 2021).

15. The DOT order permits airlines "to impose extra requirements or conditions for carriage on a person requesting an exemption, including requiring a person seeking an exemption to request an accommodation in advance, submit to medical consultation by a third party, provide medical documentation by a licensed medical provider, and/or provide other information as determined by the airline." It also permits airlines to require passengers with disabilities who cannot safely wear a mask to present evidence of a negative COVID-19 test at the passenger's expense, seat the disabled passenger on a less-crowded section of the plane, move the disabled passenger to a flight at a time when the airport is

less crowded, and/or reschedule the disabled passenger on a less-crowded flight. *U.S. Dept. of Transportation, Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft* (Feb. 5, 2021).

16. Passengers with disabilities who cannot safely wear a mask may not travel if they have not completed the extra requirements and conditions to the satisfaction of the airline.

17. The DOT order does not lay out a specific process for mask exemptions, and the requirements and number of extra steps for passengers with disabilities requiring mask exemptions vary significantly across the major domestic airlines:

    a. United Airlines, Inc. requires disabled passengers to submit a separate request form signed by his or her doctor for each trip at least seven days in advance, and if approved, must present evidence of a negative COVID-19 PCR test taken within 72 hours of departure, and may require disabled passengers to change to different flights.

    b. Southwest Airlines Co. requires disabled passengers to submit a separate request form for each flight, a doctor's note, and may be required to undergo a screening with STAT-MD, a third-party consultation service operated by the University of Pittsburgh Medical Center.[6] If approved, passengers must present evidence of a negative COVID-19 PCR test taken within 72 hours of departure at their own expense.

---

[6] A Southwest representative attested to Plaintiff that STAT-MD has sole decision-making authority on whether to approve mask exemption requests, and there is no way to appeal their decisions.

c. Delta Air Lines, Inc. requires disabled passengers to request approval from STAT-MD, in their sole judgment, at the airport on the day of travel.[7] Hawaiian Airlines also requires disabled passengers to complete an assessment with a medical professional via phone at the airport.

d. American Airlines, Inc. requires disabled passengers to submit a separate request for each trip at least 72 hours in advance, including a doctor's note, and if approved, to present evidence of a negative COVID-19 PCR or antigen test taken within 72 hours of departure at their own expense. American Airlines also may consult with a third-party service to review requests. Passengers who cannot safely wear a mask who do not request an exemption at least 72 hours' notice or who book a flight less than 72 hours before departure are outright barred from traveling.

e. JetBlue Airways Corp. requires disabled passengers to provide advance notice, present documentation, and comply with other unspecified steps.

f. Frontier Airlines requires disabled passengers to submit a doctor's note with at least 10 days' notice, states it will contact the doctor to validate the note, and if approved, present evidence of a negative COVID-19 test taken within 72 hours of departure at their own expense.

g. Sun Country Airlines Holdings, Inc. requires disabled passengers to submit a separate request form signed by his or her doctor for each trip at least 5 days in advance, check in at least two hours early, and if approved, present evidence of a

---

[7] A Delta representative attested to Plaintiff that STAT-MD has sole decision-making authority on whether to approve mask exemption requests, and there is no way to appeal their decisions.

      negative COVID-19 test taken within 72 hours of departure at their own expense or evidence of recovery within the last 90 days.

   h. Alaska Airlines requires disabled passengers to provide advance notice, provide contact information for their doctor (and requires the doctor's response to the airline within 72 hours of the flight), and if approved, present a negative COVID-19 test taken within 72 hours of departure at their own expense.

   i. Allegiant Travel Company requires disabled passengers to provide at least 10 days of advance notice, and if approved, present a negative COVID-19 test taken within 72 hours of departure at their own expense.

   j. Spirit Airlines, Inc. requires disabled passengers to provide at least 48 hours' notice, submit a doctor's note, present a negative COVID-19 test taken within 72 hours of departure at their own expense, submit to undergo a medical screening with an unspecified third-party service, and arrive at the airport at least three hours before the flight.

### B. Plaintiff's Standing

1. Plaintiff is a United States citizen whose nearest commercial airport is Pittsburgh International Airport, within the boundaries of the United States District Court for the Western District of Pennsylvania, and he most often travels via commercial airlines from Pittsburgh International Airport. A substantial part of the events giving rise to this lawsuit arose within this district, including events which occurred or will occur at Pittsburgh International Airport, with regards to flights to and from Pittsburgh International Airport, and with regards to multiple mask exemption decisions made by a third-party medical contractor of multiple commercial airlines which is based in Pittsburgh.

2. Plaintiff suffers from a disability as defined by the Americans with Disabilities Act, 42 U.S.C. § 12101, and the Air Carrier Access Act, 49 U.S.C. § 41705 and 14 C.F.R. § 382.3.

3. Plaintiff qualifies for an exemption from the mask mandate as outlined in the CDC guidelines. Plaintiff has consulted with multiple physicians who have agreed that he should be medically exempt from the mask mandate, and has a signed doctor's note from his physician stating his professional judgment that Plaintiff qualifies for an exemption and should be exempt from wearing a mask due to his disability.

4. Plaintiff requested a mask exemption from Delta Air Lines, Inc. on January 15, 2022 at Pittsburgh International Airport, and, after supplying the title of his diagnosis, was approved to travel without a mask by Delta's third-party consultation service, STAT-MD (operated by the University of Pittsburgh Medical Center), which is the sole-decision maker for mask exemptions on Delta and Southwest flights,[8] and successfully traveled without a mask.

5. Plaintiff requested a mask exemption from Delta on January 30, 2022 at Pittsburgh International Airport, and, after supplying the name of his diagnosis, was approved by STAT-MD to travel without a mask, and successfully traveled without a mask.

6. Plaintiff requested a mask exemption from Delta on February 2, 2022 at Ronald Reagan Washington National Airport for his return flight to Pittsburgh International Airport, and was denied by STAT-MD to travel without a mask. Multiple Delta representatives advised Plaintiff that STAT-MD's decision was final and binding and there was no

---

[8] Representatives for both Delta and Southwest attested to Plaintiff that STAT-MD has sole decision-making authority on whether to approve mask exemption requests for both airlines, and there is no way to appeal their decisions.

process for appealing or reconsidering it. Because he could not travel without a mask, had been denied a mask exemption for which he qualified, and there was no other airline which would consider mask exemption requests made on the day of the flight if he were to re-book with another airline, Plaintiff was forced to cancel his flight, rent a car one-way, and drive to his destination in icy weather.

7. Plaintiff requested two mask exemptions from Southwest Airlines Co. on February 4, 2022 for two upcoming flights from/to Pittsburgh International Airport with the requisite advance notice and a doctor's note in accordance with their policy, and was denied a mask exemption based on a decision by STAT-MD, which had never spoken with him about the request. STAT-MD was contacted by Southwest and made its decision even though Plaintiff had a doctor's note and Southwest did not cite reason to believe there was a significant adverse change in his condition since the note was issued, nor that the certificate significantly understated his risk to the health of other passengers on the flight.

8. A Southwest representative advised Plaintiff that STAT-MD's decision was final and binding and there was no process for appealing or reconsidering it, even though he had a doctor's note. Plaintiff was forced to cancel both his flights, and because alternative transportation across the country was not feasible, forced to cancel the entire trip altogether.

9. Plaintiff submitted a mask exemption request, including a doctor's note, to American Airlines, Inc. on February 12, 2022 for a different upcoming flight from Pittsburgh International Airport with advance notice and a doctor's note in accordance with their policy, and was denied a mask exemption.

10. Plaintiff submitted a mask exemption request, including a doctor's note, to Southwest on February 15, 2022 for another upcoming flight from Pittsburgh International Airport and was again denied a mask exemption based on a decision by STAT-MD, which had never spoken with him or conducted a medical screening about the request. STAT-MD was contacted without Plaintiff's knowledge or consent even though Plaintiff had a doctor's note and Southwest did not cite reason to believe there was a significant adverse change in his condition since the note was issued, nor that the certificate significantly understated his risk to the health of other passengers on the flight, as is required by the law.

11. Plaintiff is a party directly regulated by the CDC order and the DOT order because he is a person with a disability who is unable to safely fly with a mask.

12. Plaintiff has been denied exemptions from the mask mandate despite meeting the qualifications and requirements, based on authority given to the airlines by the DOT order.

13. Plaintiff has already been forced to cancel several flights and trips because his mask exemption requests were denied. Plaintiff has several more upcoming flights from Pittsburgh International Airport and will be required to undergo illegal extra steps to travel or be barred from taking them because he cannot safely wear a mask.

## COUNT I

## AGENCY ACTION NOT IN ACCORDANCE WITH LAW:

## AIR CARRIER ACCESS ACT

14. Plaintiff restates the preceding paragraphs as though set forth fully herein.

15. The CDC order and the DOT order are both in flagrant violation of the Air Carrier Access Act.

16. The Air Carrier Access Act consists of 49 U.S.C. § 41705 and its implementing regulations, 14 C.F.R. § 382. The act prohibits U.S. and foreign carriers from discriminating against passengers on the basis of disability and requires carriers to make reasonable accommodations for passengers with disabilities. 14 C.F.R. § 382.1.

17. The Air Carrier Access Act lays out specific and narrow conditions under which airlines may impose extra conditions, restrictions, or requirements on passengers with disabilities.

18. The Air Carrier Access Act specifically prohibits airlines from refusing or delaying transportation; imposing on passengers any condition, restriction, or requirement not imposed on other passengers; or requiring passengers to provide a medical certificate, on the basis that a passenger has a disability, communicable disease, or other medical condition, unless, among other narrow exceptions, the passenger is determined to present a "direct threat", 14 C.F.R. § 382.21, defined as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services." 14 C.F.R. § 382.3.

19. The Air Carrier Access Act allows airlines to require passengers who present a medical certificate to undergo additional medical review only if there is a legitimate medical reason for believing there has been a significant adverse change in the passenger's condition since the issuance of the certificate or if the certificate understates the risk posed by the passenger to other passengers. *Ibid*.

20. The Air Carrier Access Act prohibits airlines from requiring passengers with disabilities to provide advance except to obtain "certain specific services", including flying with certain medical equipment, flying with a service animal, and other very limited services, not including not wearing a mask. 14 C.F.R. § 382.27

21. The Air Carrier Access Act states that carriers "must not subject passengers with a disability to restrictions that do not apply to other passengers, except as otherwise permitted in this part". 14 C.F.R. § 382.33

22. By allowing and encouraging airlines to require advance notice, doctor's notes, third-party medical screenings, rescheduling, negative tests, etc. for passengers with disabilities requesting a mask exemption, the CDC and DOT are issuing orders in direct contradiction to the Air Carrier Access Act.

23. The DOT order requires airlines to presumptively treat *every* passenger as a direct threat and thus require them to wear masks. But the Air Carrier Access Act specifically states, "In determining whether an individual poses a direct threat, you must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: 1) The nature, duration, and severity of the risk; 2) The probability that the potential harm to the health and safety of others will actually occur; and 3) Whether reasonable modifications of policies, practices, or procedures will mitigate the risk." 14 C.F.R. § 382.19.

24. The CDC, DOT, and the airlines are most certainly not making an *individualized* assessment of each passenger because they have implemented a blanket policy which treats *every* passenger as a direct threat, regardless of vaccination status, prior infection and recovery, or any other factors. They have taken a narrowly tailored legal provision and applied it to hundreds of millions of people across America and the world.

25. Even if the DOT's treatment of every passenger as a direct threat was rational and legal, the Air Carrier Access Act only allows airlines to impose extra requirements and conditions on passengers with disabilities if they are determined to be a direct threat.

Because *every* passenger is labeled a direct threat, but only passengers with disabilities are being required to undergo onerous extra steps like providing advance notice or a doctor's note, the CDC and DOT are unlawfully subjecting passengers with a disability who cannot safely wear a mask to requirements and restrictions that do not apply to other passengers.

26. If everyone is a direct threat, passengers with disabilities who cannot safely wear a mask are no more of a direct threat than passengers without disabilities. There is no provision in the Air Carrier Access Act for requiring disabled passengers labeled direct threats to undergo extra steps not required of non-disabled passengers labeled direct threats.

27. In other words, if the direct threat standard were being applied equally, then non-disabled passengers would also be required to submit to advance notice, doctor's notes, third-party medical screenings, rescheduling, negative tests, etc., but they are not. The burden is borne solely by disabled passengers who cannot safely wear a mask.

28. The CDC and DOT orders permit and even *encourage* airlines to make impositions on disabled passengers which are specifically prohibited by the Air Carrier Access Act.

29. Additionally, the DOT order permits airlines to require passengers who present a medical certificate (doctor's note) to undergo medical review without citing any reason to believe "there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate or that the certificate significantly understates the passenger's risk to the health of other persons on the flight," as the Air Carrier Access Act requires.

30. Furthermore, the CDC and DOT orders allow and encourage airlines to treat disabled passengers arbitrarily and capriciously. There is no uniform mask exemption policy for

airlines, and disabled passengers are expected to jump through different hoops for each airline, with no guarantee that their exemptions will be approved or honored.

31. Plaintiff himself has complied with every step of at least three airlines' processes and still been denied an exemption by each of them. In the case of denials from Delta and Southwest, Plaintiff has submitted a signed letter from a doctor who actually knows and treats him and specializes in his condition, only to be denied based on the decision of a third-party medical service (STAT-MD) which does not know him, has not treated him, has no expertise in his condition, has not conducted a medical screening of him beyond asking what is his diagnosis, and thus cannot possibly understand the individual factors specific to him and his condition, as the law requires.

32. Whereas the Air Carrier Access Act was designed provide consistent and fair treatment of passengers with disabilities across the airline industry, the CDC and DOT orders create fundamentally arbitrary and capricious processes across all airlines, so it is impossible for disabled passengers requiring mask exemptions to expect consistent and fair treatment.

33. As demonstrated earlier, some airlines require a medical screening, others require a doctor's note, and still others require a doctor's note *and* a medical screening. Some airlines require a separate doctor's note for each trip, which is not only burdensome but expensive if the doctor chooses to charge for his time.

34. Some airlines allow passengers to request an exemption at the airport on the day of the flight while others require as much as 10 days' advance notice to request an exemption. In the latter case, if a disabled passenger who cannot safely wear a mask does not provide the requisite notice, he is outright barred from traveling on some airlines.

35. Even if a passenger fully complies with all steps of a particular airline's mask exemption process, the DOT order says he *still* can be denied if the airline is not "satisfied" with his request. *U.S. Dept. of Transportation, Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft* (Feb. 5, 2021).

36. A disabled passenger may be granted an exemption by one airline but refused by another, or even be granted an exemption by an airline one day and denied by the same airline a few days later, as happened in Plaintiff's case.

37. Such a regulatory regime which makes reasonable accommodations almost impossible to obtain, and requires disabled persons to undergo onerous steps at the cost of significant time and expense (and sometimes humiliation and invasion of privacy) to obtain them, is unlawful.

38. The DOT order and CDC order have created an illegal scheme which is designed to violate the rights of disabled passengers who cannot safely wear a mask. They have no authority to arbitrarily and capriciously twist the meaning of narrowly-tailored legal provisions and turn them into blanket provisions allowing airlines to violate the rights of the disabled. This scheme exceeds their authority under the law and itself violates federal law.

39. Because the Air Carrier Access Act provides no private right of action, *Stokes v. Southwest Airlines,* 887 F.3d 199 (5th Cir. 2018), the onus is on DOT to enforce it. Since DOT is explicitly permitting and encouraging airlines to commit violations of the law it is charged to enforce, this Court must step in.

## INJUNCTIVE RELIEF ALLEGATIONS

40. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

41. Plaintiff alleges that both on its face and as applied, the mask mandate violates his rights under the Air Carrier Access Act.

42. Plaintiff alleges that the CDC order and the DOT order explicitly allow airlines to unlawfully discriminate against him on the basis of his disability and encourage airlines to impose on him conditions, restrictions, and requirements which are expressly prohibited by the Air Carrier Access Act.

43. Plaintiff will be irreparably harmed unless this Court enjoins Defendants from enforcing the Mask Mandate.

44. Plaintiff has no plain, speedy, and adequate remedy at law to prevent the Defendants from enforcing the Mask Mandate.

45. If not enjoined by this Court, Defendants will continue to enforce the Mask Mandate in violation of Plaintiff's rights.

46. Accordingly, injunctive relief is appropriate.


## DECLARATORY RELIEF ALLEGATIONS

47. Plaintiff re-states and re-alleges the preceding paragraphs as though set forth fully herein.

48. An actual, substantial controversy exists between Plaintiffs and Defendants.

49. The case is presently justiciable because the Mask Mandate applies to Plaintiff. Plaintiff has already had his rights violated and reasonably expects they will be violated again.

50. Declaratory relief is therefore appropriate to resolve this controversy.

**PRAYER FOR RELIEF**

Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that the mask mandate is unlawful. Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendants from enforcing the mask mandate.

WHEREFORE, Plaintiff prays for judgment against Defendants and that the Court:

1. Declares that the Mask Mandate unlawfully discriminates against persons with disabilities in violation of the Air Carrier Access Act;
2. Holds unlawful and set aside the Mask Mandate;
3. Issues a preliminary injunction against the Defendants and their agents, administrators, employees, or other persons acting on their behalf, from enforcing the Mask Mandate;
4. Issues a permanent injunction against the Defendants and their agents, administrators, employees, or other persons acting on their behalf, from enforcing the Mask Mandate;
5. Awards Plaintiff costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney fees pursuant to 28 U.S.C. § 2412; and
6. Grants such other and further relief as the Court deems equitable, just, and proper.

                                                           Respectfully submitted,

                                                                 John Doe
                                             Pro Se Non-Attorney Plaintiff
                                                 724 Brady Avenue, Unit A
                                                    Steubenville, Ohio 43952
                                                       703-408-4158

---

[9] Plaintiff intends to make a motion to proceed under pseudonym after this case is filed.